UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

D.B.A., a minor child, by and through
Angela Snerlling, his Mother,

Civil No. 10-1045 (PAM/FLN)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Special School District No. 1,
Minneapolis, Minnesota,

Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Judgment on the Record or Remand. For the reasons that follow, Plaintiffs' Motion is denied, and Defendant's Motion is granted.

**BACKGROUND**

Plaintiff D.B.A. is now an 18-year-old male who was detained as a juvenile in the Hennepin County Juvenile Detention Facility ("JDF"), and then at the Hennepin County Adult Detention Center ("ADC") from April 2008 to November 2009. Because these facilities are located within the Minneapolis Public School boundaries, Defendant Special School District No. 1 ("District") provided educational services to D.B.A.

On February 16, 2009, D.B.A., through his mother, Angela Snerlling, requested a special education due process hearing alleging procedural and substantive violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. During the pendency of the action, D.B.A. filed a motion to have the Hearing Officer designate his

October 3, 2007 Individual Education Program ("IEP") as the "stay put" IEP. The Hearing Officer obliged. Then, in July 2007, D.B.A.'s attorneys, on behalf of several other similarly situated students, filed a complaint against the Minnesota Department of Education alleging negative systemic conditions at both JDF and ADC.

Before a special education hearing commenced, the parties settled both matters, signing a settlement agreement dated July 29, 2009. The agreement provided for the amount and kind of educational services the District was obligated to provide D.B.A. at the ADC beginning on September 1, 2009, and continuing for the duration of his time there. (Agreement sec. 2(a), at 1-2.) Furthermore, the agreement stated that "[t]he Parent and Student specifically release[] the District from any individual claims known or unknown arising out of the Student's education . . . to the time of execution of the Agreement." (Agreement sec. 4, at 4-5.)

Several weeks before being transferred to a state prison in St. Cloud, Minnesota, D.B.A. filed another complaint, again through Snerlling, alleging a failure to provide free appropriate public education ("FAPE") in accordance with the October 2007 IEP from September 1 to November 10, 2009—the duration of D.B.A.'s incarceration at ADC as contemplated in the parties' settlement agreement . It is undisputed that the District did not provide educational services in accordance with the October 2007 IEP during this time period. The District argued that the settlement agreement provided a new IEP and, therefore, it was not obligated to follow the October 2007 IEP's requirements. Additionally, the District asserted that the Hearing Officer was precluded from reviewing the case because the

settlement agreement revoked his jurisdiction over the matter. The Hearing Officer agreed with the District that he lacked the authority to review the matter, and entered an order to that effect on January 8, 2010. This appeal followed.

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine issues of material fact and the case can be decided as a matter of law. Fed. R. Civ. P. 56. The moving party bears the burden of proof and the evidence must be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Yet "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson, 477 U.S. at 256.

**B.    IDEA Analysis**

Under the IDEA, a party must first exhaust its administrative remedies pursuant to

state law before seeking judicial review in federal court. See 20 U.S.C. § 1415(i)(2)(A); Indep. Sch. Dist. No. 283 v. J.D. & N.D. ex rel. S.D., 88 F.3d 556, 560 (8th Cir. 1996). Once such review is deemed proper, a federal court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). As the Eighth Circuit has recognized, such a review is "less deferential . . . than the substantial evidence test common to federal administrative law." Indep. Sch. Dist. No. 283, 88 F.3d at 561. Indeed, "[j]udicial review of agency action may be conducted on the administrative record even if there are disputed issues of material fact." Id.

The District argues that this Court lacks subject matter jurisdiction because the IDEA confers federal jurisdiction over settlement agreements only if an agreement was conducted pursuant to a resolution or mediation session. (Def.'s Summ. J. Mem. at 11 (citing 20 U.S.C. § 1415(f)(1)(B)(iii), (e)(2)(F)(iii)).) Because the settlement agreement was reached outside of these processes and before the due process hearing commenced, the District contends that D.B.A. has no recourse in this Court.

In support of this argument, the District cites Bowman ex rel. W.B. v. District of Columbia, No. 05-1933, 2006 WL 2221703 (D.D.C. Aug. 2, 2006), wherein the court held that it lacked subject matter jurisdiction to adjudicate a dispute over a settlement agreement that was reached outside the resolution or mediation sessions provided for in the IDEA. But this case does not involve the enforcement of a settlement agreement. Indeed, D.B.A. argued

4

both in his briefs and at oral argument that his October 2007 IEP should be the measure of his educational services, not the settlement agreement.[1] This case thus involves a review of an administrative decision regarding IEP implementation, which is a function specifically provided for in the IDEA. See 20 U.S.C. § 1415(I). The District's argument fails on this point.

The District also cites S.A.S. ex rel. W.S. v. Hibbing Pub. Schs., No. Civ. 04-3204, 2005 WL 1593011 (D. Minn. July 1, 2005), as support for its position that this Court lacks jurisdiction. In that case, Judge Tunheim held that a settlement agreement reached between the parties during the administrative process precluded the court from exercising jurisdiction over the matter. The agreement's relevant provision stated that the plaintiff waived "all Free Appropriate Public Education and Least Restrictive Environment (FAPE/LRE) claims, whether asserted or not, that have been brought or could have been brought in any administrative or judicial forum (hearing or complaint)." Id. at *4 (internal quotation marks and citation omitted). In essence, the court held that even though it was impossible for the plaintiff to exhaust his administrative remedies because of the language of this provision, the court still could not exercise jurisdiction on the basis of plaintiff's failure to exhaust administrative remedies.

---

[1]The Court will not consider D.B.A.'s argument, first proffered in his response to the District's memorandum in support of its summary judgment motion, that D.B.A. was deprived of the 10 hours per week of one-to-one or small group specialized instruction as delineated in the settlement agreement. (Pl.'s Resp. Mem. at 8-10.) No such allegation appeared in the Complaint, and it is inappropriate to address a new argument at this juncture.

5

S.A.S. is inapposite to the instant matter. That case involved a plaintiff who attempted to exact a remedy in federal court pursuant to the same claims that the plaintiff had already settled in the earlier administrative proceedings. Conversely, this case involves D.B.A.'s assertion that the District's actions after the settlement agreement had been entered into—specifically, the time period from September 1 to November 10, 2009—violated the IDEA. Indeed, under the plain language of the settlement agreement in this case, D.B.A. has waived only those claims that arose "to the time of execution of the Agreement." (Agreement sec. 4 at 4-5.) Thus, any claims that arise after the agreement are actionable. Because D.B.A. alleges that the District's actions occurred after "the execution of the agreement," his claims may be heard.

The next issue that must be addressed is whether the Hearing Officer applied the proper procedural requirements in reaching his decision. The Hearing Officer found that the parties' settlement agreement superseded the October 2007 IEP governing D.B.A.'s FAPE rights. (Administrative Order at 5.) He then found that "a Hearing Officer has no authority to enforce a settlement agreement between the parties . . . [because] the settlement agreement is a contract between the parties." (Id.) The Hearing Officer even went a step further, declaring that exercising jurisdiction would be improper where he was "forced to review, interpret and enforce the settlement." (Id.) Therefore, the Hearing Officer refused to exercise jurisdiction over the matter and summarily dismissed the case.

D.B.A. takes umbrage with the Hearing Officer's reasoning, citing what he deems "two inconsistent determinations." (Pl.'s Mem. Supp. Mot. at 6.) D.B.A. claims that, if the

Hearing Officer does lack the authority to enforce the settlement agreement, the Hearing Officer should have refrained from finding that the agreement trumped the October 2007 IEP.

It is certainly true that a Hearing Officer has no authority to enforce settlement agreements. Indeed, where a dispute "does not concern the 'identification, evaluation, or educational placement of the child, or the provision of [FAPE] to such a child,' . . . a due process hearing before a [Hearing Officer] [i]s not the proper vehicle to enforce the settlement agreement." H.C. ex rel L.C. v. Colton-Pierrepont Cent. Sch. Dist., 341 Fed. App'x 687, 690 (2d Cir. 2009) (quoting 20 U.S.C. § 1415(b)(6)(A)). In this regard, the Hearing Officer's holding was accurate.

Yet there is no such prohibition on a Hearing Officer's ability to review and interpret a settlement agreement for the purposes of determining whether jurisdiction exists. See id. at 690 n.3 (implicitly assenting to the Hearing Officer's review of the settlement agreement at issue, while affirming his decision to decline enforcement of the same). The Hearing Officer's holding that he was categorically precluded from reviewing and interpreting is therefore erroneous. Indeed, as D.B.A. points out, if the Hearing Officer truly believed this statement, he would not have reached the conclusion that the settlement agreement superseded the October 2007 IEP in this case. Because he was within his right to do so, however, this Court holds that the Hearing Officer properly reviewed the settlement agreement for the purposes of determining whether exercising jurisdiction was appropriate.

Having held that the Hearing Officer followed proper procedural requirements, the

Court must now address the seminal question of whether the parties' July 2009 settlement agreement supersedes D.B.A.'s October 2007 IEP. D.B.A. attempts to demonstrate that "[a] settlement agreement cannot displace a student's entitlement to a current IEP." (Pl.'s Mem. Supp. Mot. at 6.) Specifically, D.B.A. points to the strict statutory requirements that an IEP must contain. (Id. at 16-17 (citing 20 U.S.C. § 1414(d)(1)(A).) Because these requirements were not followed when the settlement agreement was drafted, D.B.A. argues that the agreement cannot supersede the IEP. D.B.A. asserts that the October 2007 IEP was still in effect during the September 1 to November 10, 2009, time frame contemplated by the settlement agreement; therefore, the District failed to provide D.B.A. with the requisite FAPE.

The Eighth Circuit has recognized that "the IDEA allows parents to decline services and waive all benefits under the IDEA." Fitzgerald v. Camdenton R-III Sch. Dist., 439 F.3d 773, 775 (8th Cir. 2006) (citing 20 U.S.C. § 1414(a)(1)(D)(ii)(II)). In that case, the court held that "a [school] district may not force an [IDEA] evaluation." Id. at 777. Indeed, "[w]hen parents waive their child's right to services, school districts may not override their wishes." Id. at 775.

In another case, the Third Circuit held that a district court did not abuse its discretion in declining to find good cause to void a settlement agreement regarding a child's IDEA rights when no duress was present. Ballard v. Philadelphia Sch. Dist., 273 Fed. App'x 184, 187 (3d Cir. 2008). The court also found unconvincing the argument that the parent "later believed that the settlement terms did not provide adequate relief for her daughter." Id. It

noted that "[p]arties routinely enter into agreements to resolve litigation. An agreement is not void because a party settled for less than s/he later believes the law provides." Id. at 188; accord M.R. & B.R. ex rel. D.R. v. E. Brunswick Bd. of Educ., 109 F.3d 896, 901 (3d Cir. 1997) ("[P]arents should not be allowed to void the [settlement] agreement merely because the total cost of the program subsequently increases. A party enters a settlement agreement, at least in part, to avoid unpredictable costs of litigation in favor of agreeing to known costs.")

In the settlement agreement here, the parties explicitly provided for D.B.A.'s educational services while he was incarcerated at ADC, namely, from September 1 to November 10, 2009. (Agreement sec. 2 at 1-2.) Yet D.B.A. seeks to avoid this provision by essentially arguing that he and his mother—both of whom signed the settlement agreement—may not unilaterally waive his FAPE rights. Such an argument must fail. First, as noted above, a parent may waive his or her child's FAPE rights. It is surely a logical extension of this principle to say that where both the parent and child sign a settlement agreement limiting the child's FAPE rights, such a waiver must stand. Second, D.B.A. cannot avoid this provision by now claiming that the settlement agreement's terms did not provide him with adequate relief. It is true that the applicable provision afforded D.B.A. substantially fewer educational services than what he would have received under the October 2007 IEP. But it is not the province of this Court to set aside the parties' agreement merely because one party does not like the ultimate outcome unless such an agreement "violate[s] law or public policy." Id. Neither of these exceptions is present here. Thus, because

Snerlling and D.B.A. intended for the settlement agreement to supersede D.B.A.'s October 2007 IEP for the duration of D.B.A.'s incarceration at ADC, this Court must give credence to that desire.

**CONCLUSION**

Because no breach of the settlement agreement was alleged in the Complaint, this Court need not delve into the efficacy of the educational services provided by the District. It is enough to say that, for the purposes of the time period alleged in this case, September 1 to November 10, 2009, the settlement agreement superseded the October 2007 IEP and D.B.A.'s claim must therefore fail.

Accordingly, **IT IS HEREBY ORDERED that** Defendant's Motion for Summary Judgment (Docket No. 17) is **GRANTED**, and Plaintiffs' Motion for Judgment on the Record or Remand (Docket No. 15) is **DENIED**.
**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   December 16, 2010   

                                             s/Paul A. Magnuson              
                                             Paul A. Magnuson
                                             United States District Court Judge